# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ANDRE WILLIAM HURREY, § | | |
|     Petitioner, § | | |
| § | | |
| V. § | A-09-CA-658-SS | |
| § | | |
| RICK THALER, Director, § | | |
| Texas Dept. of § | | |
| Criminal Justice-Correctional § | | |
| Institutions Division, § | | |
|     Respondent. § | | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:  The Honorable Sam Sparks, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1) and Respondent's Answer (Document 17). Petitioner did not file a response thereto. Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.** **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 147th Judicial District Court of Travis County, Texas, in cause number D-1-DC-06-300078. Petitioner was found guilty of sexual assault, and he was sentenced to 10 years in prison.

Petitioner's conviction was affirmed on December 12, 2007. Hurrey v. State, No. 03-07-0065-CR, 2007 WL 4354444 (Tex. App. – Austin 2007, no pet.). Petitioner did not file a petition for discretionary review. He did, however, challenge his conviction in two state applications for habeas corpus relief. Petitioner's first application was dismissed, as his direct appeal was pending. Ex parte Hurrey, Appl. No. 68,702-01. Petitioner's second application was denied without written order on the findings of the trial court without a hearing. Ex parte Hurrey, Appl. No. 68,702-02.

**B.** **Factual Background**

On the 7th of January, 2006, Petitioner sexually assaulted G.L. G.L. testified that she had met Petitioner in February 2005, when she began working as a leasing agent at the apartment complex where Petitioner lived. 3 RR 75-77. Petitioner visited the leasing office often, bringing by flowers, lunch, and a picture of himself for G.L., G.L.'s assistant manager, and G.L.'s manager. 3 RR 78, 100, 101. G.L. testified that she and her husband were having some problems and had discussed separating. 3 RR 77, 79. A friendship developed between G.L. and Petitioner over the span of 2005, which evolved into a romantic relationship by November of that year. 3 RR 79. G.L. testified that Petitioner "would act like a very gentlemen," was "concerned, very attentive," and "a caring person." 3 RR 78-80. She also admitted they had sexual relations twice, once in November and once in

December. 3 RR 103, 81. However, their relationship ended and re-started a few times, primarily when G.L. and her husband were discussing keeping their marriage together. 3 RR 79-83. After Christmas, G.L. made the decision to stay with her husband, and clearly ended her relationship with Petitioner; Petitioner was upset by the news. 3 RR 80, 85.

On January 7, 2006, G.L. was working in the office alone when Petitioner visited her once at noon, and again in the afternoon about fifteen minutes before the office closed. 3 RR 85. At that later visit, Petitioner followed G.L. into a back room of the office. 3 RR 86. There Petitioner "held [G.L.'s] hands in the back, put them back and he held them with one hand and then the other hand he used to unzip [G.L.'s] pants," while G.L. "kept on telling him no, [she] wanted to go home and – and he didn't want to let [her] go home and [she] begged him to let [her] go home because that's all [she] wanted and [she] didn't want to do anything." 3 RR 86-87. G.L. testified that Petitioner then removed her pants, laid her on the floor, removed his pants, then "put his penis inside [her] vagina," telling her:

> to play with his nipples and to call him daddy. Then he turned [G.L.] on [her] fours and then he put his penis inside of [her] vagina again. And he told [her] to tell him what was doing to [her]. [She] didn't know what he wanted [her] to say. Then he said tell me what I was doing. [She] didn't know what to answer him. Then he said tell me that I'm raping you. He wanted [her] to repeat that over and over again, and [she] did. And he turned [her] back around, laid down, and he went back in, he went back in. And he fingered [her] first before he went back in, and then he went back in. Then he put his penis inside [her] vagina again. He said you know I'm finished. And then he said to have oral sex with him and he put his penis inside [her] mouth and he would put it all the way in. And then he finished inside of [her] mouth.

3 RR 86-87. G.L. testified that she was afraid for her life and for her family because Petitioner had previously found out where she lived, and that the assault was not consensual. 3 RR 88-89. G.L. told her brother about this incident later that night; he encouraged her to call the police. 3 RR 89-90.

3

G.L. told another close friend about the assault the next day, after G.L. had gone to work and two acquaintances remarked on her looking unwell. 3 RR 90-93. Her close friend convinced G.L. to talk to the police, and G.L. met with a police officer at a local hospital. 3 RR 93.

G.L. was transferred to another hospital, where a Sexual Assault Nurse Examiner ("SANE") conducted and exam. 3 RR 93. The SANE-certified registered nurse who had conducted the exam testified that she had been licensed for more than four years and had conducted approximately 250 SANE exams. 3 RR 54. Regarding her examination of G.L., the nurse testified that G.L. "was very upset, really introverted, quiet, but crying," during the exam, and "seemed really distraught" and "increased crying when she gave [the nurse] the history of the sexual assault." 3 RR 56. The nurse testified that G.L. reported tenderness to the wrists and knees and two bruises on her knee. 3 RR 58-59. The nurse also testified to a redness at "seven o'clock on the inner aspect of the vaginal opening," which indicated "lots of blood flow to the area" in comparison to the surrounding tissue. 3 RR 60. The nurse further testified that she could not immediately discern any additional damage to G.L.'s vaginal area, but after applying toluidine dye, a skin-staining solution used by SANE nurses during the SANE exam, the posterior fourchette area immediately absorbed the dye, indicating there were tears and breaks in the skin. 3 RR 61. The nurse also testified that, in the perineum area, she observed "small dots" of dye, which she compared to "if you were to skin your knee, you may not rip open all the tissue but little parts here and there, if there was any kind of friction, it may remove a top layer of the skin." 3 RR 62. The nurse indicated the dye would not likely stain injuries older than 96 hours, but research definitely indicates the dye would not stain injuries older than two weeks. 3 RR 62, 64. Finally, the nurse testified that G.L. indicated she had not had sexual intercourse in the week prior to Petitioner's attack. 3 RR 62. After the exam was conducted, an Austin Police

4

Department detective was assigned to this case and conducted an investigation, which included speaking with G.L., Petitioner, and the witness to whom G.L. had made an outcry; charges were subsequently filed against Petitioner. 3 RR 17-51.

## C. Petitioner's Grounds for Relief

Petitioner raises the following grounds for relief:

1. *The trial court erred and thus violated Petitioner's due process rights by:*

    a. *refusing to hear Petitioner's pro se motion for discovery, contrary to the Texas Constitution and state case law;*

    b. *refusing to hear Petitioner's pro se motion for speedy trial, contrary to the Texas Constitution and state case law; and*

    c. *failing to inquire whether Petitioner wished to represent himself when it addressed and denied his motion to dismiss counsel;*

2. *Petitioner was denied effective assistance of counsel on appeal because his counsel:*

    a. *filed an Anders[1] brief;*

    b. *failed to communicate with Petitioner; and*

    c. *failed to address the issues as Petitioner had instructed;*

3. The state habeas court failed to properly address Petitioner's motions or ensure proper service of filing, contrary to the First Amendment and Texas case law;

4. He was denied effective assistance of counsel at trial because his counsel failed to:

    a. conduct a pre-trial investigation;

    b. follow Petitioner's instructions on pre-trial filings;

    c. share information with Petitioner;

    d. prepare the record for appeal; and

---

[1] Anders v. California, 386 U.S. 738 (1967).

  e.  explore and expand on contradictory testimony presented by the State; and

 5. The Texas Court of Criminal Appeals denied Petitioner's state habeas application without addressing his pleadings and motions before the court, and thus violated Petitioner's rights to due process and under the Fifth, Fourteenth, and First Amendments.

**D. Exhaustion of State Court Remedies**

Respondent asserts Petitioner has not exhausted his state court remedies with respect to the italicized claims, claims 1, 2, 4c, and 4d. Respondent argues those claims are procedurally barred. Petitioner further argues claims 3 and 5 are not cognizable on federal habeas review. Respondent does not contest that Petitioner has exhausted his state court remedies regarding Petitioner's remaining claims brought in this application, specifically claims 4a, 4b, and 4e. A review of the state court records submitted by Respondent shows that Petitioner has properly raised claims 4a, 4b, and 4e in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A. Infirmities in State Habeas Proceedings**

To the extent Petitioner complains the Texas Court of Criminal Appeals and the state trial court did not adequately consider all of his claims or address his pleadings and motions during state habeas review, which denied him meaningful access to the court system, his claim fails. Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas corpus relief. Wheat v. Johnson, 238 F.3d 357, 361 (5th Cir. 2001); Vail v. Procunier, 747 F.2d 277 (5th Cir. 1984).

**B. Unexhausted Claims**

Petitioner has not exhausted claims 1, 2, 4c, and 4d. Petitioner's unexhausted claims are procedurally barred. A subsequent state application for habeas corpus on Petitioner's unexhausted

issues would be futile as it would be dismissed pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 as an abuse of the writ. When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief. Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally barred. Coleman, 501 U.S. at 735, 111 S. Ct. at 2557. The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. Id. at n.1. However, a petitioner can still obtain federal habeas review on a claim denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996), citing Coleman, 501 U.S. at 750, 111 S. Ct. 2565, cert. denied, 519 U.S. 1093, 117 S. Ct. 773 (1997).

Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claims would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his unexhausted claims. [2]

**C.      Exhausted Claims**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable

---

[2] To the extent Petitioner's claims that the trial court erred when it refused to hear his pro se motions may be exhausted they are without merit. As explained by the state court, Petitioner was represented by counsel and not entitled to hybrid representation. Ex parte Hurrey, Appl. No. 68,702-02 at 70; see also Robinson v. State, 240 S.W.3d 919, 923 (Tex. Crim. App. 2007) (holding that "[b]ecause the motion for new trial was presented pro se while the appellant was represented by counsel, the trial court was free to rule on it, or disregard it").

determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the exhausted issues raised by the pleadings in this cause.

### 1. Ineffective Assistance of Counsel

Petitioner argues trial counsel was ineffective because counsel failed to conduct a pre-trial investigation, follow Petitioner's advice on pre-trial filings, and explore and expand on testimony which contradicted testimony presented by the State.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

> defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

Petitioner contends counsel failed to adequately investigate his case. An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994). However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely

allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993); United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989); Lockhart v. McCotter, 782 F.2d 1275, 1282-83 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S. Ct. 1360 (1987). Petitioner failed to offer any specific facts supporting his contention that his counsel failed to investigate his case. Petitioner fails to allege with specificity what further investigation would have revealed or how it would have altered the outcome of his trial, other than stating that he "argu[ed] with" Mr. Sauer about "the pre-trial investigating or lack of." Fed. Writ Pet. at 8.

Petitioner also contends counsel was ineffective for failing to "adher[e] to [his] instructions pertaining to pre-trial filings." Fed. Writ Pet. at 8. Petitioner fails to provide the Court with any additional details or legal support for his claim or explain how he was prejudiced by counsel's performance. "Mere conclusory statements do not raise a constitutional issue in a habeas case." Schlang v. Heard, 691 F.2d 796, 799 (5th Cir. 1982).

Petitioner further contends counsel was ineffective for failing to explore and expand on contradictory testimony presented by the State. Fed. Writ Pet. at 9. Specifically, Petitioner complains that counsel "refused to explore and expand the fact that the alleged victim . . . called the SANE nurse a liar and said the statement the nurse published to the jury taken during the exam was not what [the victim] had said during the interview." Id. As explained by Respondent, the only statement within the SANE report which the victim appears to contradict relates to the victim's menstrual cycle: that she was "having some problems" with her menstrual cycle, and not, as the

11

report may have reflected, that she was menstruating one week prior to Petitioner having assaulted her. 3 RR 117. Petitioner fails to show how he was prejudiced by counsel's failure to further explore and expand upon this alleged contradiction.

Relying on counsel's affidavit, the state habeas court issued detailed findings of fact and conclusions of law. Ex parte Hurrey, Appl. No. 68,702-02 at 69-70. The habeas court concluded that Petitioner failed to demonstrate that trial counsel rendered ineffective assistance of counsel. Id. at 70. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in

Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

13

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of January, 2010.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE