IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ANDRE WILLIAM HURREY,

                  Petitioner,

-vs-                                                        Case No.  A-09-CA-658-SS

RICH THALER, Director,
Texas Dept. of Criminal Justice-Correctional
Institutions Division,

                  Respondent.

_____

## ORDER

      BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Andre William Hurrey ("Petitioner")'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [#1]; Respondent Rick Thaler ("Respondent")'s Motion to Dismiss [#17]; the Report and Recommendation of the Magistrate Judge [#18], and Petitioner's objections thereto [#23]; and Petitioner's Motions for the Court to Take Judicial Notice or Action [#24] and [#25],  Petitioner's Motion to Amend his Motions to Take Judicial Notice or Action [#26], and Petitioner's Inquiry as to the status of his previous motions [#27].

      All matters in this case were referred to the Honorable Robert Pitman, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective December 1, 2002.  On January 25, 2010, the Magistrate Judge issued his report and recommendation that Petitioner's federal habeas corpus petition be denied.  *See* Rep. & Rec. at 1.  Petitioner timely filed an emergency motion, claiming he was unable to timely respond to the report and recommendation with

written objections because a prison employee took his copy of the report and recommendation and refused to return it. Pet.'s Em. Mot. [#20] at 1. This Court granted Petitioner an extension so he would have opportunity to file objections to the report and recommendation. Feb. 18, 2010 [#21] Order at 1. Petitioner filed his written objections to the Magistrate's report and recommendation on March 12, 2010, the deadline set by this Court, and thus the Court reviews the Magistrate Judge's report and recommendation de novo. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Having reviewed the petition, the report and recommendation, the objections, Petitioner's various other motions, the applicable law, and the case file as a whole, the Court ACCEPTS the Magistrate Judge's report and recommendation for the following reasons.

## Background

### I.     Procedural Background

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 147th District Court of Travis County, Texas, in cause number D-1-DC-06-300078, styled *The State of Texas v. Andre Hurrey*. *See* Resp.'s Mot. Dismiss [#17] at 3. Petitioner was convicted of sexual assault and sentenced to 10 years imprisonment on January 11, 2007. *Id.*

Petitioner's conviction was affirmed on December 12, 2007. *Hurrey v. State*, No. 03-07-0065-CR, 2007 WL 4354444 (Tex. App.–Austin Dec. 12, 2007, no pet.). Petitioner did not file a petition for discretionary review. He did, however, challenge his conviction in two state applications for habeas corpus relief. Petitioner's first application was dismissed, as his direct appeal was then pending. *Ex parte Hurrey*, Appl. No. 68,702-01. Petitioner's second application was denied without written order on the findings of the trial court; no hearing was held. *Ex parte Hurrey*, Appl. No. 68,702-02.

## II.    Factual Background

At Petitioner's trial for sexual assault, the victim, G.L., testified she was sexually assaulted by Petitioner on January 7, 2006.[1]   According to several witnesses' testimony, G.L. met Petitioner in February 2005, when she began working as a leasing agent at the apartment complex where Petitioner lived.  3 RR 75-77.  Petitioner visited the leasing office frequently, bringing flowers, lunch, and other tokens for G.L. and her assistant manager and manager.  3 RR 78, 100, 101.  G.L. testified she and her husband were having marital problems and had discussed separating.  3 RR 77, 70.  G.L. and Petitioner developed a friendship throughout 2005, and by November of that year, their friendship had evolved into a romantic relationship.  3 RR 79.  G.L. testified Petitioner was a gentleman, "very attentive," and "a caring person."  3 RR 78-80.  She admitted they had sexual relations twice, once in November and again in December.[2]  3 RR 81, 103.  Their relationship was sporadic, however, primarily due to the fact G.L. and her husband were discussing keeping their marriage together.  3 RR 79-83.  After Christmas 2005, G.L. decided to stay with her husband and clearly ended her relationship with Petitioner, against his wishes.  3 RR 80, 85.

On January 7, 2006, G.L. was working alone in the office when Petitioner visited her twice: once at noon and again about fifteen minutes before the office closed.  3 RR 85.  During the second visit, Petitioner followed G.L. into a back room of the office.  3 RR 86.  Petitioner then "held [G.L.'s] hands in the back, put them back and he held them with one hand and then the other hand he used to unzip [G.L.'s] pants," while G.L. "kept on telling him no" and begged him to let her leave.  3 RR 86-87.

---

[1]The victim's initials are G.E.; however, both Respondent and the Magistrate Judge refer to her as "G.L." The Court continues to use the initials "G.L." for the sake of consistency.

[2] A close examination of the trial court record shows G.L. contradicts herself about the number of times she and Petitioner had intercourse.  Earlier in the trial, G.L. admits to having sex with Petitioner multiple times.  3 RR 104.  Another witness, Detective Farbo, testifies she learned from her conversations with the victim that Petitioner and G.L. had sex many times.  3 RR 37-38.

Petitioner then removed her pants, laid her on the floor, removed his pants, then "put his penis inside [her] vagina" and sexually assaulted her.  *Id.*  During the sexual assault, G.L. testified Petitioner kept telling her to "tell me that I'm raping you."  *Id.*  He then had her perform oral sex on him.  *Id.*

G.L. testified she was afraid for her life and her family because Petitioner knew where she lived, and the assault was not consensual.  3 RR 88-89.  G.L. told her brother about this incident later that night, and he encouraged her to call the police.  3 RR 89-90.  G.L. told a close friend about the assault the next day, and her friend convinced her to talk to the police; she later met a police officer at a local hospital.  3 RR 90-93.

G.L. was transferred to another hospital, where a Sexual Assault Nurse Examiner ("SANE") conducted an exam.  *Id.*  The nurse testified that during her examination, G.L. "seemed really distraught" and "increased crying when she gave [the nurse] the history of the sexual assault."  3 RR 56.  The nurse testified G.L. reported tenderness to the wrists and knees and two bruises on her knee. 3 RR 58-59.  The nurse also testified to a redness at "seven o'clock on the inner aspect of the vaginal opening," which indicated "lots of blood flow to the area" in comparison to the surrounding tissue.  3 RR 60.  The nurse further testified she could not immediately discern any additional damage to G.L.'s vaginal area, but after applying toluidine dye, a skin-staining solution used by SANE nurses during an exam, the posterior fourchette area immediately absorbed the dye, indicating there were tears and breaks in the skin.  3 RR 61.  The nurse testified that, in the perineum area, she observed "small dots" of dye, which she compared to "if you were to skin your knee, you may not rip open all the tissue but little parts here and there, if there was any kind of friction, it may remove a top layer of the skin."  3 RR 62.  The nurse indicated any areas which absorbed the dye would not likely reflect any injuries older than 96 hours.  3 RR 62, 64.  Finally, the nurse testified G.L. reported she had not had sexual intercourse in the week prior to Petitioner's attack.  3 RR 62.  After the exam, a detective from the

Austin Police Department was assigned to this case and conducted an investigation. 3 RR 17-51. The detective spoke with G.L., Petitioner, and the witness who convinced G.L. to call the police,[3] and subsequently, charges were filed against Petitioner. *Id.*

### Petitioner's Grounds for Relief

Petitioner raises several grounds for relief, claiming: (1) the trial court violated his due process rights by refusing to hear his pro se motions for discovery, for a speedy trial, and to dismiss his counsel, Pet. at 7; (2) Petitioner was denied effective assistance of counsel on appeal because counsel filed an *Anders* brief instead of raising the issues Petitioner had instructed him to raise on appeal,[4] and failed or refused to communicate with Petitioner, *id.*; (3) the state habeas court failed to address Petitioner's motions properly or ensure "proper service of filings," contrary to the First Amendment (and Texas case law), *id.*; (4) Petitioner was denied effective assistance of counsel at trial because counsel failed to (a) conduct a pre-trial investigation, (b) follow Petitioner's instructions on pre-trial filings, (c) share information with Petitioner, (d) prepare the record for appeal, and (e) explore and expand on conflicting testimony presented by the State, *id.*; and (5) the Texas Court of Criminal Appeals denied Petitioner's state habeas application "without addressing and answering his pleadings or motions before the court," thus violating Petitioner's due process rights pursuant to the First, Fifth, and Fourteenth Amendments, Pet. at 8, 9, 9A.  The Court now examines Petitioner's five arguments for relief.

---

[3]This witness is identified in the record as Kimberly Moll, a resident of the apartment complex where the assault occurred.  3 RR 29.

[4]An *Anders* brief is an appellate brief filed by counsel which provides a professional evaluation of the record and demonstrates why no arguable grounds can be advanced on behalf of appellant.  *Anders v. California*, 386 U.S. 738 (1967).

**Exhaustion of State Court Remedies**

Respondent argues claims (3) and (5), as numbered above, are not cognizable on federal habeas review. Respondent further asserts Petitioner has not exhausted his state court remedies with respect to claims (1), (2), (4)(c), and (4)(d), and thus, those claims are procedurally barred. Respondent does not dispute Petitioner has exhausted his state court remedies for the remaining claims brought in this application—claims (4)(a), (4)(b), and (4)(e)—and a review of the state court records submitted by Respondent shows Petitioner has properly raised claims (4)(a), (4)(b), and (4)(e) in previous state court proceedings.

**Analysis**

**I.      Infirmities in State Habeas Proceedings**

Claims (3) and (5) relate to alleged infirmities in Petitioner's state habeas proceedings. Specifically, Petitioner claims the Texas Court of Criminal Appeals and the state trial court did not adequately consider all his claims or address his pleadings and motions during state habeas review, thereby denying him meaningful access to the court system. Pet. at 8 and 9-A. However, as Respondent correctly notes, infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas corpus relief with respect to a petitioner's conviction because such claims are "an attack on a proceeding collateral to the detention and not [on] the detention itself." *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (quoting *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987)). The Court therefore disregards Petitioner's claims relating to his state habeas proceedings, as they are not cognizable on federal habeas corpus review.

**II.     Unexhausted Claims**

Likewise, the Court agrees with Respondent that Petitioner has not exhausted claims (1), (2), (4)(c), and (4)(d); thus, those claims are procedurally barred. Resp.'s Mot. at 8. Petitioner had the

opportunity to raise claims (1), (2), (4)(c), and (4)(d) in prior petitions but failed to do so. Therefore, he is barred from bringing those claims in a subsequent habeas application after a final disposition on his initial application challenging the same conviction. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1). A subsequent state application for habeas corpus on Petitioner's unexhausted issues would be futile as it would be dismissed as an abuse of the writ, pursuant to TEX. CODE CRIM. PROC. art. 11.07, § 4.

A federal court may not grant habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Woodfox v. Cain*, —F.3d—, 2010 WL 2505580 (5th Cir. 2010). Exhaustion requires the petitioner to "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). Since Petitioner has not presented the substance of claim (2)(c) in any form, that claim remains unexhausted and is now procedurally barred.

When a state court decision rests on a state law ground independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the case on its merits. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In order for a claim of procedural default to preclude federal review of a habeas claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally barred. *Coleman*, 501 U.S. at 735.

The general rule—that a state court must explicitly apply a procedural bar to preclude federal review—does not apply to those cases in which a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would

now find those claims to be procedurally barred. *Id.* at n.1. The exhaustion doctrine "'reflects a policy of federal-state comity . . . designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)). Therefore, "[a] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* These requirements prevent petitioners from "avoid[ing] the exhaustion requirement by defaulting their federal claims in state court" only to petition the federal courts for redress. *Id.* However, a petitioner can still obtain federal habeas review on a claim denied by the state court on procedural default grounds if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996) (citing *Coleman*, 501 U.S. at 750).

In this case (and even though the Magistrate Judge noted this issue), Petitioner has failed to show cause and actual prejudice for his procedural default, and has made no effort to show a failure to address the merits of the federal claims would result in a miscarriage of justice. Petitioner does claim the trial court erred by refusing to hear his pro se motions, but these claims are without merit. Petitioner was represented by counsel, as indicated in the record, and thus was not entitled to hybrid representation. *Ex parte Hurrey*, App. No. 68,702-02 at 70. The Court of Criminal Appeals has held repeatedly a trial court is free to disregard any pro se motions filed with regard to a criminal proceeding in which the defendant is represented by counsel. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *see also Landers v. State*, 550 S.W.2d 272 (Tex. Crim. App. 1977). Put simply, a trial court has no legal duty to rule on such motions. *Id.*

In accordance with the foregoing, the Court finds Petitioner is barred from raising his unexhausted claims: claims (1), (2), (4)(c), and (4)(d).

### III.    Properly Exhausted Claims

#### A.    Standard of Review under 28 U.S.C. § 2254

The standard of review in federal habeas cases filed by state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, 110 Stat. 1214 (1996).  Under AEDPA, a habeas petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001).  A presumption of correctness attaches to factual determinations made by a state court.  28 U.S.C. § 2254(e)(1).  A habeas petitioner must rebut this presumption by clear and convincing evidence.  *Id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

The Fifth Circuit has held that, because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when state habeas relief is denied without an opinion. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citing *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").  With these principles in mind, this Court turns to the remaining exhausted claims raised by Petitioner.

**B.    Ineffective Assistance of Counsel**

Petitioner argues trial counsel was ineffective because counsel failed to (1) conduct a pre-trial investigation (claim 4a), (2) follow Petitioner's advice on pre-trial filings (claim 4b), and (3) explore and expand on testimony which contradicted testimony presented by the State (claim 4e). Pet. at 7-9.

*(1)    Legal Standard for Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  Thus, an allegation of ineffective assistance of counsel is a cognizable basis for collateral review.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  To establish ineffective assistance of counsel, a petitioner must allege and prove (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish the "deficient performance" prong, a petitioner must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel'" the Sixth Amendment guarantees.  *Id.*  The attorney's conduct is reviewed with great deference, and there is a strong presumption that counsel has exercised reasonable professional judgment. *Lockhart v. McCotter*, 782

-10-

F.2d 1275, 1279 (5th Cir. 1986).  The standard for reasonableness is an objective standard.  *See Strickland*, 466 U.S. at 687.  An attorney is not required to make futile objections, nor to press frivolous points.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Furthermore, the defendant must overcome the presumption the challenged action would be considered sound trial strategy on his counsel's part.  *Strickland*, 466 U.S. at 690.

To establish the "prejudice" prong, a petitioner must establish a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A 'reasonable probability' is one sufficient to undermine confidence in the outcome of the proceeding." *Nixon v. Epps*, 405 F.3d 318, 324 (5th Cir. 2005) (citing *Koch*, 907 F.2d at 527).  Thus, a petitioner must show more than that a different result would have been "possible." *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997).  He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997).  When a petitioner fails to meet **either** requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated.  *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996) (emphasis added).

*(2)   Discussion*

First, Petitioner contends counsel failed to adequately investigate his case.  An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance.  *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994).  In order to establish counsel's ineffectiveness by virtue of his failure to adequately investigate the case or to discover and present evidence, a petitioner must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have divulged and why it would have been likely to make any difference in defendant's trial or sentencing.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993)

(citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *see also Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).  Here, Petitioner fails to offer any specific facts supporting counsel's alleged failure to investigate his case.  He also fails to allege with specificity what further investigation would have revealed or how it would have altered the outcome of his case, other than stating he "argue[d] with" counsel about "the pre-trial investigating or lack [there]of."  Pet. at 8.  Thus, Petitioner has not shown his counsel was deficient in his pre-trial investigation under the test articulated in *Strickland*.

Petitioner also contends his counsel failed to "adher[e] to [his] instructions pertaining to pre-trial filings."  Pet. at 8.  But Petitioner fails to provide the Court with any additional details or legal support for his claim or to explain how his counsel's performance prejudiced him.  Petitioner also fails to overcome the presumption his counsel was following a sound trial strategy in his decisions concerning Petitioner's instructions.  Petitioner's contentions are largely unsupported, and "[m]ere conclusory statements do not raise a constitutional issue in a habeas case."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  Since Petitioner has not shown something "more...than conclusory allegations," his claim of ineffective assistance is not tenable on this ground.  *Id.*

Finally, Petitioner contends his trial counsel was ineffective for failing to inquire into allegedly contradictory testimony presented by the State.  Pet. at 9.  Specifically, Petitioner claims counsel "refused to explore and expand the fact that the alleged victim . . . called the SANE nurse a liar and said the statement the nurse published to the jury taken during the exam was not what [the victim] had said during the interview."  *Id.*  As Respondent explains, and we here affirm, the only statement within the SANE report which contradicted the victim's testimony relates to the victim's menstrual cycle: G.L. testified she was "having some problems" with her menstrual cycle, and was not, as the report may have reflected, menstruating one week prior to being assaulted by Petitioner.  3 RR 117.  Petitioner fails to

show how his counsel's failure to further explore and expand upon this alleged contradiction was prejudicial to his case or was contrary to counsel's sound trial strategy on behalf of Petitioner. Thus, this claim fails to show Petitioner's counsel provided ineffective assistance.

Relying on counsel's affidavit, the state habeas court issued detailed findings of fact and conclusions of law. *Ex parte Hurrey*, Appl. No. 68,702-02 at 69-70. The habeas court concluded Petitioner had failed to demonstrate his trial counsel was ineffective. *Id.* Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim for habeas relief based on the ineffective assistance of his trial counsel is denied, according to 28 U.S.C. § 2254, as amended by the AEDPA.

## IV.   Petitioner's Objections

Petitioner raises several objections to the Magistrate Judge's report and recommendation. Pet.'s Objs. at 23. First, Petitioner claims he did not sexually assault G.L.[5] But Petitioner was tried, convicted, and sentenced for the sexual assault of G.L., and his conviction was affirmed. Rep. & Rec. at 2. Unless a state-court adjudication on the merits of Petitioner's claim resulted in (1) a decision "contrary to, or involved in an unreasonable application of, clearly established federal law," or (2) a decision "based on an unreasonable determination of the facts in light of the evidence presented" in state court," this Court cannot, under the AEDPA, grant Petitioner federal habeas corpus relief on his claim. 28 U.S.C. § 2254(d)(1)-(2). As the record gives no indication the trial court decision manifests either type of deficiency, Petitioner's claim is not tenable under the AEDPA.

---

[5] Petitioner spends the next six pages elaborating on intimate details of his relationship with G.L., as well as what occurred on the day of the assault. He maintains—as he did during trial—he is not guilty of sexually assaulting G.L. *See* Pet.'s Objs.

Second, Petitioner claims the Report and Recommendation erroneously combines his Fifth and Fourteenth Amendment claims, none of which were found to have been exhausted, with his Sixth Amendment ineffective assistance of counsel claims, which Petitioner properly exhausted in state court prior to filing his federal habeas corpus petition. Petitioner's Sixth Amendment claims have been discussed thoroughly. As for his Fifth and Fourteenth Amendment claims (claims (1), (2), (4)(c), and (4)(d)), the record indicates Petitioner did not exhaust his state court remedies for these claims. Petitioner concedes he did not raise "all issue[s] of Ground Two" in his state writ applications.[6] Pet.'s Objs. at 8-9. Thus, Petitioner is procedurally barred from bringing the unexhausted claims in this federal habeas corpus petition. Both the Magistrate Judge and this Court properly considered and dismissed all of Petitioner's claims, and there is no basis for Petitioner's claim that the Court erred by "combining" the claims in a fashion contrary to Petitioner's original intent.

Finally, Petitioner argues claims (4)(c) and (4)(d) have in fact been exhausted, as Petitioner believed "that by stating clearly [in his state writ applications] that trial counsel always did things halfway that that would cover" claims (4)(c) and (4)(d). However, a pleading which offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Merely insinuating his counsel "always did things halfway" does not help Petitioner to meet the standard for pleading a claim that his counsel failed either to share information with Petitioner or to prepare the record for appeal. Thus, these claims must fail for lack of exhaustion.

Petitioner concludes his objections with a plea for appointed counsel in his petition for federal habeas corpus. Pet.'s Objs. at 10-11. But, "there is no federal constitutional right to counsel for

---

[6]"Ground Two" refers to Petitioner's second claim in his original petition for writ of habeas corpus. *See* Pet. This claim has been labeled "claim (2)" by the Magistrate Judge and this Court. *See* Rep. & Rec. at 5.

indigent prisoners seeking state postconviction relief." *Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989). While the Sixth and Fourteenth Amendments to the Constitution assure the right of an indigent defendant to counsel during trial-level criminal proceedings, as well as during an initial appeal from the judgement and sentence of the trial court, the right to counsel does not extend to any discretionary appeals. *Id.* at 7. Subsequent actions for postconviction relief in the federal court system are even further removed from state trial proceedings than a discretionary appellate review, and thus do not entitle Petitioner to any greater extension of federal constitutional right to counsel than he is currently denied on discretionary appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). This petition falls squarely into the category of federal postconviction relief; therefore, Petitioner has no constitutional right to appointed counsel, and this Court denies his plea.

## V.      Other Motions by Petitioner

Petitioner has filed several other motions in addition to his objections. Specifically, Petitioner asks the Court to take judicial notice or action. Petitioner claims prison personnel are discriminating against him by not posting any outbound "inmate legal mailings on TUESDAYS OR THURSDAYS if the inmate holds the status of being indigent . . . simply because he has no money to purchase first class postage stamps." Pet.'s Mot. [#25] at 1. Petitioner then states this discrimination clearly "den[ies] access to the courts on an equal basis to the poor state prison thus violating Federal law and Constitutional rights covering the freedoms from discrimination by American citizens." *Id.*

Even assuming Petitioner's statements regarding his access to the courts are true, the claims are moot. This Court previously granted an emergency motion by Petitioner asking for more time to file objections to the Report and Recommendation on the grounds that prison personnel allegedly had taken his copy of the Report and Recommendation, thus inhibiting his access to the courts. Additionally, this Court has recognized all of Petitioner's pertinent motions as timely. Thus, in no way has Petitioner

been prejudiced, even if his outbound mail has been somehow delayed by not being posted on certain days of the week.  The motions for judicial notice or action are accordingly DISMISSED as moot.

Finally, In his motion to amend his previous motions to take judicial notice, Petitioner seeks to redress his failure to serve a copy of the prior two motions on Respondent.[7]  As the Court finds the prior motions moot, there is no need for the Court to take judicial notice of irrelevant facts. Accordingly, his motion to amend the motions for judicial notice are DENIED in full.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability ("COA")."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing § 2254 Cases, effective December 1, 2009, the district court must issue or deny a COA when it enters a final order adverse to the petitioner.

A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA

---

[7]When he served a copy of his two motions on this Court, Petitioner explained he was "unable to serve a true and correct copy of the above and foregoing MOTION due to the FACTS: prison personnel refuse to issue me indigent supplies: (blank paper); and are continuously refusing to post my outbound legal mailings; and I have had to trade my daily meals for this writing paper and first class postage stamp for this mailing thus violating prison rules covering traffic and trading and subjecting myself to retaliation through disciplinary actions by prison personnel and have only one stamp use."  Pet.'s Mot. [#24] at 2.  The explanation in Petitioner's Motion [#25] is virtually identical.

should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a COA shall not be issued.

### Conclusion

In accordance with the foregoing:

IT IS ORDERED that the Report and Recommendation of the Magistrate Judge [#16] is ACCEPTED.

IT IS FURTHER ORDERED that Petitioner Andre William Hurrey's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [#1] is DENIED.

IT IS FURTHER ORDERED that Respondent Rick Thaler's Motion to Dismiss [#17] is GRANTED.

IT IS FURTHER ORDERED that Petitioner's Motions for the Court to Take Judicial Notice or Action [#24] and [#25] are DISMISSED as moot, and Petitioner's Motion to Amend [#26] is DENIED in full.

SIGNED this the 8th day of July 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE